UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| CLIFFORD W. MILLER,<br><br>　　　　　　　　Petitioner,<br>　　v.<br>KYLE OLSEN,[1] *et al.*,<br><br>　　　　　　　　Respondents. | Case No. 3:19-cv-00673-MMD-CSD<br><br>ORDER |

### I.　SUMMARY

Petitioner Clifford W. Miller filed a third amended petition for writ of habeas corpus under 28 U.S.C. § 2254 (ECF No. 29 ("Petition")). This matter is before the Court for adjudication on the merits of the remaining grounds in the Petition. For the reasons discussed below, the Court denies the Petition and denies Petitioner a certificate of appealability.

### II.　BACKGROUND[2]

#### A.　Conviction and Appeal

Petitioner challenges a 2006 judgment of conviction and sentence imposed by the

---

[1] The state corrections department's inmate locator page indicates that Petitioner is incarcerated at the Northern Nevada Correctional Center. *See* https://ofdsearch.doc.nv.gov/form.php (retrieved January 2023 under identification number 70907). The department's website reflects that Fernandies Frazier is the warden of that facility. *See* https://doc.nv.gov/Facilities/NNCC_Facility/ (retrieved January 2023). At the end of this order, the Court directs the Clerk of Court to substitute Petitioner's current immediate physical custodian, Fernandies Frazier, as Respondent for the prior Respondent Kyle Olsen under Rule 25(d) of the Federal Rules of Civil Procedure.

[2] The Court makes no credibility findings or other factual findings regarding the truth or falsity of evidence or statements of fact in the state court. The Court summarizes the factual assertions solely as background to the issues presented in the case, and it does not summarize all such material. No statement of fact made in describing statements, testimony, or other evidence in the state court constitutes a finding by the Court. Any absence of mention of a specific piece of evidence or category of evidence does not signify that the Court has overlooked the evidence in considering Petitioner's claims.

Sixth Judicial Court for Humboldt County. *See State of Nevada v. Clifford W. Miller*, Case No. 99-4204. Following a 2001 jury trial, Petitioner was found guilty of two counts of murder of the first degree with the use of a deadly weapon. (ECF No. 63-9.) The state court entered a judgment of conviction. (*Id.*) Petitioner appealed, and the Nevada Supreme Court reversed the judgment of conviction, finding multiple trial errors, including legally incorrect jury instructions, erroneous admission of hearsay evidence, and improper exclusion of Petitioner's suicide note. (ECF No. 64-17.) The Nevada Supreme Court remanded for a new trial. (*Id.*)

On remand, following a jury trial, Petitioner was found guilty of two counts of murder of the first degree with the use of a deadly weapon. (ECF No. 70-3.) The state court entered a judgment of conviction in November 2006, and sentenced Petitioner to consecutive terms of life without the possibility of parole on both counts of murder of the first degree with equal and consecutive terms of life without the possibility of parole for the use of a deadly weapon. (*Id*.) The Nevada Supreme Court affirmed the judgment of conviction. (ECF No. 71-16.)

### 1.     Facts Underlying Conviction

Police responded to shots fired at an apartment complex and found Petitioner lying on the ground outside of the complex, suffering from a self-inflicted gunshot wound to the head. (ECF No. 64-17.) Police found the deceased bodies of Lisa Jenkins Miller, Petitioner's estranged wife, and Leon Carlson, Lisa's boyfriend, inside the apartment. (*Id.*) Lisa was shot in the head, and Leon was shot in the groin and in the head. (*Id.*) Petitioner survived his suicide attempt and the state court found that he was competent to stand trial. (*Id*.)

On the evening of the incident, Petitioner called his father, told his father that his car had broken down, and asked his father to pick him up. (*Id*.) Petitioner's father drove to pick up Petitioner but could not locate Petitioner or his car. (*Id*.) Petitioner's father later discovered that his revolver, a .45 Colt handgun, was missing from his home. (*Id*.) Police

recovered a .45 Colt handgun from the scene of the shooting, as well as a magazine clip matching the handgun from Petitioner's pants pocket. (*Id*.)

### 2. Petitioner's Trial Attorneys

Attorney Robert Dolan represented Petitioner in the 2001 jury trial. At the 2001 trial, the defense argued that Petitioner went to the apartment with the intent to commit suicide. (ECF No. 62-1 at 151-197.) The defense presented evidence related to Petitioner's mental health, including suicidal ideation, depression, and borderline personality disorder, arguing that Petitioner lacked specific intent under the felony murder theory. (*Id*.) In addition, the defense argued that the jury should find that Petitioner was provoked, that Petitioner acted in the heat of passion, and that the jury should return a verdict under voluntary manslaughter. (*Id*. at 184-193.)

Following the Nevada Supreme Court's order for remand, at a status hearing in November 2004, Dolan informed the state court that he was leaving the public defender's office and that Andrew Myers represented Petitioner. (ECF No. 65-7.) In January 2006, because Myers went on administrative leave, the state court appointed Steven McGuire to represent Petitioner. (ECF No. 65-18.)

### B. State Post-Conviction Proceedings and Federal Habeas Action

Petitioner sought post-conviction relief in a state petition for writ of habeas corpus, which the state court denied after appointment of counsel and an evidentiary hearing. (ECF Nos. 72-22, 74-1.) The Nevada Court of Appeals affirmed the denial of relief. (ECF No. 75-7.)

On November 7, 2019, Petitioner initiated this federal habeas proceeding *pro se*. (ECF No. 1.) The Court appointed counsel and granted leave to amend the petition. (ECF No. 12.) Petitioner filed a first, second, and third amended petition. (ECF Nos. 7, 20, 29.) Respondents moved to dismiss Grounds 1-4 as unexhausted. (ECF No. 39.) The Court deferred consideration of whether Petitioner can demonstrate cause and prejudice under

*Martinez v. Ryan*, 566 U.S. 1 (2012), to overcome procedural default of Grounds 1-4[3] until the time of merits review. (ECF No. 86.)

## III. LEGAL STANDARD

### A. Review under the Antiterrorism and Effective Death Penalty Act

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act (AEDPA):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is contrary to established Supreme Court precedent, within the meaning of § 2254(d)(1), "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of established Supreme Court precedent under § 2254(d)(1), "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (internal citation omitted) (quoting *Williams*, 529 U.S. at 409-10).

---

[3]Petitioner abandoned Ground 1 of his Petition. (ECF No. 108.)

The Supreme Court has instructed that a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Court has stated that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted) (describing the standard as "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt").

### B.   Standard for Evaluation of Ineffective Assistance of Counsel Claims

In *Strickland v. Washington*, the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel requiring Petitioner to demonstrate that: (1) the attorney's "representation fell below an objective standard of reasonableness[;]" and (2) the attorney's deficient performance prejudiced Petitioner such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 688, 694 (1984). Courts considering a claim of ineffective assistance of counsel must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. It is Petitioner's burden to show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id.* at 687. Additionally, to establish prejudice under *Strickland*, it is not enough for Petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, the errors must be "so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable." *Id.* at 687.

Where a state district court previously adjudicated the claim of ineffective assistance of counsel under *Strickland*, establishing the decision was unreasonable is especially difficult. *See Richter*, 562 U.S. at 104-05. In *Richter*, the Supreme Court

clarified that *Strickland* and § 2254(d) are each highly deferential, and when the two apply in tandem, review is doubly so. *See id.* at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation marks omitted) ("When a federal court reviews a state court's *Strickland* determination under AEDPA, both AEDPA and *Strickland*'s deferential standards apply; hence, the Supreme Court's description of the standard as doubly deferential."). The Court further clarified, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

## IV.  DISCUSSION

### A.  Cause and Prejudice under the *Martinez* Exception

When a petitioner has procedurally defaulted his claims, federal habeas review occurs only in limited circumstances. In *Martinez*, the United States Supreme Court held that the absence or inadequate assistance of counsel in an initial review collateral proceeding may be relied upon to establish cause excusing the procedural default of a claim of ineffective assistance of trial counsel. 566 U.S. at 9. The Nevada Supreme Court does not recognize *Martinez* cause as cause to overcome a state procedural bar under Nevada state law. *Brown v. McDaniel*, 130 Nev. 565, 331 P.3d 867, 875 (Nev. 2014). Thus, a Nevada habeas petitioner who relies upon *Martinez*—and only *Martinez*—as a basis for overcoming a state procedural bar on an unexhausted claim can successfully argue that the state courts would hold the claim procedurally barred but that he nonetheless has a potentially viable cause and prejudice argument under federal law that would not be recognized by the state courts when applying the state procedural bars. "[A] procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if 'the default results from the ineffective assistance of the prisoner's counsel in the collateral proceeding.'" *Martinez*, 566 U.S. at 17.

To establish cause and prejudice to excuse the procedural default of a trial-level ineffective assistance of counsel claim under *Martinez*, a petitioner must show that: (1)

post-conviction counsel performed deficiently; (2) there was a reasonable probability that, absent deficient performance, the result of the post-conviction proceeding would have been different; and (3) the underlying ineffective assistance of trial counsel claim is a substantial one. *Ramirez v. Ryan*, 937 F.3d 1230, 1241 (9th Cir. 2019). Determining whether there was a reasonable probability that the result of the post-conviction proceedings would be different "is necessarily connected to the strength of the argument that trial counsel's assistance was ineffective." *Id.*

To show that a claim is "substantial" under *Martinez*, a petitioner must demonstrate that the underlying ineffectiveness claim has "some merit." *Martinez*, 566 U.S. at 14. That is, the petitioner must be able to make at least some showing that trial counsel performed deficiently, and that the deficient performance harmed the defense. *See Strickland*, 466 U.S. at 695-96. When evaluating counsel's choices, the Court must make "every effort … to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. "[C]ounsel should be strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Pinholster*, 563 U.S. at 189. Here, Petitioner advances only *Martinez* as a basis for excusing default for Grounds 2-4.

### 1. Ground 2

#### a. Background Information

In Ground 2, Petitioner alleges that trial counsel rendered ineffective assistance for failure to request appointment of alternate counsel. (ECF No. 29 at 9-13.) Petitioner sent a letter to the state court regarding McGuire. (*Id.*) The state court construed Petitioner's letter as a motion for new counsel and conducted a hearing. (ECF No. 65-20.) Petitioner informed the state court that McGuire did not meet with him, did not communicate with him, and that McGuire stated that a conviction for first degree murder would be "a win" for McGuire. (ECF No. 29 at 9.) After questioning Petitioner and McGuire, the state court denied Petitioner's motion for new counsel. (ECF No. 65-20 at 48-49.)

Petitioner alleges that McGuire had a conflict of interest, revealed privileged communications during the state court hearing on Petitioner's motion for new counsel, and did not advocate for Petitioner. (ECF No. 109 at 15.) Petitioner argues that prejudice should be presumed under *Cuyler v. Sullivan*, 446 U.S. 335 (1980). He asserts that McGuire had an actual conflict of interest and should have requested alternate counsel to represent Petitioner during the hearing on his motion for new counsel. (*Id*. at 16.) Petitioner further argues, in the alternative, that as a result of McGuire's deficient performance, Petitioner was represented by an attorney who failed to zealously advocate for him and failed to present a defense at trial. (*Id*. at 18-21.)

### b. *Martinez* does not apply to Ground 2.

The Court finds that Ground 2 is not substantial within the meaning of *Martinez*. 566 U.S. at 14. Effective assistance of counsel "includes a right to conflict-free counsel." *United States v. Mett*, 65 F.3d 1531, 1534 (9th Cir. 1995). To establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance. *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). If counsel actively represents multiple defendants with conflicting interests, such that an actual conflict adversely affects counsel's performance, prejudice is presumed. *See Sullivan*, 446 U.S. at 349-50. A trial judge is required to order a substitution of counsel if, after a hearing, the defendant has shown that there is a breakdown in the attorney-client relationship or that "an actual conflict of interest existed." *Wood v. Georgia,* 450 U.S. 261, 273-74 (1981).

Petitioner relies on *United States v. Del Muro*, 87 F.3d 1078 (9th Cir. 1996), arguing that McGuire's performance was affected during the state court hearing. (ECF No. 109 at 16-17.) In *Del Muro*, the Ninth Circuit found a Sixth Amendment violation where trial counsel was required to argue his own ineffectiveness at a hearing on a motion for new trial creating an inherent conflict of interest. 87 F.3d at 1080. Here, however, McGuire was not required to prove his own ineffectiveness at a motion for new trial. The state court conducted a hearing on Petitioner's motion for new counsel and found that McGuire was

competent to adequately represent Petitioner. (ECF No. 65-20 at 49.) Further, the state court did not find a conflict warranting appointment of new counsel. (*Id*.) There was no actual, irreconcilable conflict and the state court did not require McGuire to argue his own ineffectiveness as in *Del Muro*.

Petitioner fails to demonstrate that McGuire had an actual conflict of interest that adversely affected his performance and the circumstances do not warrant a presumption of prejudice. Petitioner further fails to demonstrate that had McGuire not been adversely impacted by the asserted conflict, the outcome of the trial would have been different. Accordingly, the Court determines that Ground 2 is without merit. Petitioner's post-conviction counsel was not ineffective for not asserting this claim. Petitioner does not demonstrate cause and prejudice relative to the procedural default. The Court denies Ground 2.

### 2. Ground 3

#### a. Background Information

In Ground 3, Petitioner alleges trial counsel rendered ineffective assistance for failure to present evidence regarding Petitioner's memory loss as a result of shooting himself in the head. (ECF No. 29 at 13-15.) At trial, Petitioner testified as to his memory loss and false memories resulting from the gunshot wound to his head. (*Id*.) The prosecution impeached Petitioner's credibility based on his alleged memory loss, false memories, and recovered memories. (*Id*.) Petitioner alleges that trial counsel was deficient for failing to present medical evidence regarding memory loss to corroborate Petitioner's testimony. (ECF No. 109 at 27-28.) Petitioner further alleges that had trial counsel presented medical evidence corroborating Petitioner's testimony, the outcome of the trial would have been different because Petitioner was the sole witness for the defense. (*Id*.)

Respondents argue that counsel strategically chose to avoid evidence regarding Petitioner's injury and/or suicide attempt to avoid the introduction of more damaging evidence related to homicidal thoughts recorded in Petitioner's medical military records.

(ECF No. 102 at 19-20.) Respondents further argue that Petitioner fails to demonstrate prejudice because the result of the proceeding would not have been different had counsel introduced medical evidence corroborating Petitioner's memory loss. (*Id*. at 21.)

### b. *Martinez* does not apply to Ground 3.

The Court finds that Ground 3 is not substantial, and that *Martinez* does not apply to Ground 3. Defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. In an ineffective assistance of counsel case, "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* Furthermore, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id*. at 690. "[I]neffective assistance claims based on a duty to investigate must be considered in light of the strength of the government's case." *Bragg v. Galaza*, 242 F.3d 1082, 1088 (9th Cir.), *opinion amended on denial of reh'g*, 253 F.3d 1150 (9th Cir. 2001).

Petitioner fails to demonstrate that had counsel presented medical evidence regarding Petitioner's memory loss that the outcome of the trial would have been different. At a competency hearing in April 2000, Dr. Globus testified that when an individual suffers from Petitioner's type of gunshot wound, "there is often amnesia," and "very poor memory of the events that led up to the shooting and immediately following the incident." (ECF 41-1 at 29-30.) Dr. Globus, however, even testified as to Petitioner's memory loss at the 2001 trial and a jury nonetheless found Petitioner committed first-degree murder. (ECF No. 58-1 at 210.) Further, the evidence against Petitioner was strong and Petitioner has not made a persuasive showing that counsel's investigative failure was "unreasonable under prevailing professional norms." *Strickland*, 466 U.S. at 688.

At trial, the prosecution presented evidence that Petitioner told a witness that he intended to kill Lisa, that Petitioner asked a witness to help beat up Leon, that Petitioner stated that "if [he] can't have [Lisa], no one will," that Lisa asked for a divorce, and that

Petitioner stalked Lisa and Leon. (ECF Nos. 67-1, 69-2.) The prosecution also presented evidence demonstrating premeditation and the timeline of events on the night of the incident, including that a witness observed Petitioner drive by their residence while Lisa and Leon were there, that Petitioner purchased a soda from a store down the street from Lisa's apartment, and that Petitioner planned a ruse to retrieve his father's handgun. (ECF No. 69-2 at 177.) In light of the evidence against Petitioner, there is no reasonable probability that medical evidence regarding Petitioner's memory loss would have changed the outcome of the trial.

Because Petitioner's underlying ineffective assistance of counsel claim fails under *Strickland*, Petitioner cannot meet the second prong of the *Martinez* test, which requires a petitioner to show a reasonable probability that the result of the post-conviction proceedings would have been different absent post-conviction counsel's deficient performance. *See Ramirez*, 937 F.3d at 1242. Because Petitioner failed to satisfy all three prongs of the *Martinez* test, he does not show cause and prejudice to excuse default of this claim. The Court therefore denies Ground 3.

### 3.    Ground 4

#### a.   Background Information

In Ground 4, Petitioner alleges counsel rendered ineffective assistance for failure to investigate Petitioner's mental health and failure to present a theory of defense. (ECF No. 29 at 15-20.) Petitioner asserts that he has a history of depression and suicidal ideation. (*Id*.) Counsel failed to present expert testimony related to his mental health despite the use of experts in his 2001 trial. (*Id*.) He further asserts that counsel failed to present a theory of defense and that the outcome of the trial would have been different had counsel investigated and presented a defense. (*Id*.)

Respondents argue that *Martinez* does not apply to Ground 4 because Petitioner initially raised this claim in the state court and the claim was not defaulted in the initial review collateral proceeding. (ECF No. 102 at 10-11.) In his reply, Petitioner asserts that he did not present Ground 4 to the state district court because Ground 4 of his federal

claim contains factual support that is fundamentally different than the claim presented to the state court. (ECF No. 109 at 30.) The Court agrees with Petitioner that Ground 4 was not presented to the state court because the factual allegations in the federal claim fundamentally alter the claim that was considered by the state court. In its November 9, 2021 order, the Court determined that Ground 4 was technically exhausted, but procedurally defaulted and subject to dismissal as procedurally defaulted unless Petitioner can show cause and prejudice under *Martinez*. (ECF No. 86.) Petitioner does not do so.

### b.  *Martinez* does not apply to Ground 4.

Petitioner's assertion that counsel failed to investigate Petitioner's mental health and failed to present a theory of defense is belied by the record. The defense filed a motion *in limine* to preclude the state from offering evidence of Petitioner's military records indicating he had ideas of using an axe handle against his platoon leader in 1992. (ECF No. 66-4.) During the hearing on the motion *in limine*, the parties provided as follows to the state court:

> *McGuire*: I think that unless we do open the door that the evidence is not admissible. And my reading of the State's response is that they appear to agree with that position. Our, we do not intend to open that door. We do expect that the evidence will show that my client went to the scene of the shooting that night and did in fact shoot himself in the head. But we do not intend to introduce evidence that he was of suicidal temperament or character. And with that restraint on our part I believe the State appears to recognize that if that door stays closed they don't get to bring in the evidence of the prior incident with the thoughts about using an axe handle.
>
> . . .
>
> *The State:* Judge I think counsel and I have the same understanding. The last time it was – the defense counsel asked a witness in the case, the State's case in chief, about isn't it true he was suicidal in the Army. And once that happened it was what made that evidence suddenly admissible. So, if he is to avoid any characterization of his prior suicide or suicidal tendencies as well as he doesn't put forward evidence that he's, has a character for nonviolence, which I can't imagine that he's going to put forward in the case, then I don't anticipate the evidence becoming relevant. So long as they don't open any door, we're not intending to offer it.

(ECF No. 66-9 at 7-8.)

Petitioner fails to demonstrate that his counsel was deficient under *Strickland*. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. As evidenced by the record, counsel strategically avoided presenting evidence regarding Petitioner's mental health to avoid more damaging evidence demonstrating that Petitioner had homicidal and/or violent ideation. In addition, counsel presented a theory of defense that Petitioner went to Lisa's apartment with the intent to kill himself, not Lisa or Leon, based on evidence that Petitioner shot himself and his suicide note. (ECF No. 69-2 at 189.) The defense also argued that the State failed to meet its burden of proof as to first-degree murder. (*Id*. at 192-93.) Petitioner fails to overcome the strong presumption that his counsel's conduct "falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. 689. Further, in light of the strong evidence presented against Petitioner, he fails to demonstrate that had counsel presented evidence related to Petitioner's mental health that the outcome of the trial would have been different.

Because Petitioner's underlying ineffective assistance of counsel claim fails under *Strickland*, Petitioner cannot meet the second prong of the *Martinez* test, which requires a petitioner to show a reasonable probability that the result of the post-conviction proceedings would have been different absent post-conviction counsel's deficient performance. *See Ramirez*, 937 F.3d at 1242. Petitioner fails to show cause and prejudice to excuse default of this claim. The Court therefore denies Ground 4.

**B.     Ground 5**

**1.     Background Information**

In Ground 5, Petitioner alleges counsel rendered ineffective assistance for failure to introduce his mental health history as mitigation evidence during the penalty hearing. (ECF No. 29 at 21-22.) He asserts that due to counsel's deficient performance, the jury did not know about Petitioner's history of depression and suicidal ideation, Petitioner's family history of depression, or that Petitioner was on medication on the day of the

shooting. (*Id.*) Petitioner argues that he was prejudiced because had counsel introduced mitigating evidence, he would have likely received a lower sentence. (*Id.*)

### 2. State Court Determination

The Nevada Court of Appeals held:

> [Petitioner] claims trial counsel was ineffective for failing to introduce evidence of his mental health problems and the medications he was taking to treat these problems as mitigating evidence at sentencing. The district court found trial counsel's decision not to introduce evidence of [Petitioner's] mental health problems and family history of suicide and depression during the penalty phase of trial was a sound trial strategy because it precluded the State from introducing harmful evidence of his previous suicidal and homicidal thoughts and a prior bad act of domestic violence. The district court further found that [Petitioner] failed to demonstrate a reasonable likelihood that the results of the penalty phase would have been different if this evidence had been presented. We conclude the district court's findings are supported by the record, [Petitioner] failed to meet his burden to prove ineffective assistance of counsel, and the district court did not err by rejecting this claim because trial counsel's strategic decision was unchallengeable under the circumstances of this case. *See McNelton v. State*, 115 Nev. 396, 410, 990 P.2d 1263, 1273 (1999) ("The decision as to what mitigating evidence to present [is] a tactical [decision].").

(ECF No. 75-7 at 4.)

### 3. Conclusion

The Nevada Court of Appeals' ruling was neither contrary to nor an objectively unreasonable application of clearly established law as determined by the United States Supreme Court. As stated by the Nevada Court of Appeals, counsel adopted an objectively reasonable trial strategy to preclude introduction of harmful evidence that Petitioner had previous homicidal thoughts and a prior bad act of domestic violence at sentencing. Counsel chose to emphasize other mitigation factors and argued that Petitioner was not "the most heinous killer," because he did not seek financial gain, did not kill because of racial or religious hatred, did not torture, and did not kill for "thrills or kicks." (ECF No. 70-2 at 110-11.) "[W]here a defendant's psychiatric history is both mitigating and incriminating, trial counsel is best positioned to determine how to incorporate a diagnosis into the defense." *Daire v. Lattimore*, 818 F.3d 454, 465 (9th Cir. 2016); *Wong* v. Belmontes, 558 U.S. 15, 18 (2009). Petitioner has not established that

14

counsel's performance fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

Further, the Nevada appellate court reasonably determined that Petitioner failed to demonstrate prejudice. At sentencing, the State presented testimony from Sheila Nuttall, Lisa's friend, that Lisa separated from Petitioner on multiple occasions, that Lisa told Nuttall that Petitioner was physically violent, and that Nuttall observed bruises on Lisa's arms. (ECF No. 70-2 at 54-56.) A child that Lisa babysat also testified that Petitioner scared her when Petitioner hit Lisa. (*Id*. at 65-70.) The state also presented testimony from Leon's family and friends regarding the impact of Leon's death. (*Id*. at 81-97.) Accordingly, it was not unreasonable for the Nevada appellate court to conclude that Petitioner failed to demonstrate a reasonable likelihood that the results of the penalty phase would have been different if counsel presented further mitigation evidence of Petitioner's mental health history. Petitioner is therefore denied federal habeas relief as to Ground 5.

**C.     Ground 6**

**1.     Background Information**

In Ground 6, Petitioner alleges he was denied due process and his Sixth Amendment right to counsel when the trial court did not remove McGuire and appoint new counsel to represent Petitioner. (ECF No. 29 at 22-24.) Petitioner asserts that he made a timely request for new counsel after McGuire commented that a murder conviction would be "a win," and that the state court did not adequately inquire into the issue. (ECF No. 109 at 51.) Further, he could not demonstrate a genuine conflict to the state court because he was not appointed conflict-free counsel at the motion hearing. (*Id*.)

**2.     State Court Determination**

On direct appeal, the Nevada Supreme Court held:

> [Petitioner] contends that the district court abused its discretion when it (1) did not provide him with an adequate hearing on his request for new counsel, (2) did not provide him with new counsel, (3) allowed the State to appear and present evidence during his hearing to substitute counsel. We disagree because the district court's hearings adequately addressed [Petitioner's] concerns.

>This court reviews a district court's denial of a motion to substitute counsel for abuse of discretion. *Garcia v. State*, 121 Nev. 327, 337, 113 P.3d 836, 843 (2005). In *Garcia*, this court noted that "a defendant in a criminal trial does not have unlimited right to the substitution of counsel." *Id*. at 337, 113 P.3d at 842. To demonstrate a Sixth Amendment violation, a defendant must show sufficient cause. *Id*. When this court reviews a denial of a motion to substitute counsel, it considers the following three factors: "(1) the extent of the conflict between the defendant and his or her counsel, (2) the timeliness of the motion and the extent to which it will result in inconvenience or delay, and (3) the adequacy of the court's inquiry into the defendant's complaints." *Id*. at 337, 113 P.3d at 842-43.
>
>With reference to [Petitioner's] first motion to dismiss counsel, the *Garcia* factors support the district court's denial. As to the first *Garcia* factor, [Petitioner] did not allege any conflict with his present counsel, Steven McGuire, and instead simply stated that he preferred his former attorney, Andrew Myers. The fact that [Petitioner] wanted the public defender assigned to his first trial because the two had established rapport was not an adequate ground for substituting counsel. Regarding the second factor, the record reveals that [Petitioner] moved to substitute counsel approximately six months before the trial was scheduled, which does not suggest intent to delay proceedings. Under the third factor, the district court's inquiry into [Petitioner's] complaints about McGuire was adequate because the district court canvassed [Petitioner] and inquired into retaining Myers for [Petitioner]. Under these circumstances, we conclude that the district court did not err when it denied [Petitioner's] first motion to dismiss counsel.
>
>As to [Petitioner's] second motion to dismiss counsel, the district court did not abuse its discretion under the three *Garcia* factors. First, there was no genuine conflict, despite McGuire's inappropriate comment, because [Petitioner] and McGuire met on several occasions to discuss the case. Second, [Petitioner] made his motion two months before the upcoming trial, causing an unreasonable delay. Third, the district court adequately inquired into [Petitioner's] complaints by questioning both [Petitioner] and McGuire. In addition, the court correctly stated that [Petitioner] could hire an attorney of his choice, but he could not personally pick the public defender assigned to the case. *Young v. State*, 120 Nev. 963, 968-69, 102 P.3d 572, 576 (2004).
>
>We also reject [Petitioner's] argument that the district court should have conducted an in camera proceeding outside of the State's presence. The district court did not need to hold an in camera proceeding because McGuire directly and adequately answered the court's questions, met with [Petitioner] multiple times to discuss trial preparation, and agreed to attempt to resolve the conflict in due course. *See Garcia*, 121 Nev. 339, 113 P.3d at 844 (concluding that the district court did not abuse its discretion when it did not conduct an in camera inquiry into the defendant's motion for substitution of counsel because the defendant's attorney directly addressed the court on the motion and agreed to resolve the issues causing the purported conflict). Accordingly, we conclude that the district court did not err when it denied [Petitioner's] motions to substitute counsel.

(ECF No. 21-2 at 3-5.)

### 3. Conclusion

The Nevada Supreme Court's ruling was neither contrary to nor an objectively unreasonable application of clearly established law as determined by the United States Supreme Court. Indigent individuals have a Sixth Amendment right to representation by an attorney who: (1) functions in the role of an active advocate, *Entsminger v. State of Iowa*, 386 U.S. 748, 751 (1967); (2) is free of actual conflicts of interest, *Sullivan*, 446 U.S. at 350; and (3) provides effective assistance at trial, *Strickland*, 466 U.S. at 688. Further, the Sixth Amendment guarantees effective assistance of counsel, but not a "meaningful relationship" between an accused and his counsel. *Morris v. Slappy*, 461 U.S. 1, 14 (1983).

The Ninth Circuit has ruled that a trial court's denial of a request for substitution of counsel can violate a defendant's constitutional right to effective assistance of counsel if the defendant and his attorney were embroiled in an "irreconcilable conflict" which resulted in a total lack of communication preventing an adequate defense. *Hudson v. Rushen*, 686 F.2d 826, 829 (9th Cir. 1982), *cert. denied*, 461 U.S. 916 (1983). The Ninth Circuit has identified three factors to be considered when determining whether an attorney/client conflict rises to the level of intolerably irreconcilable: (1) the extent of the conflict; (2) the adequacy of the inquiry by the trial court; and (3) the timeliness of the motion to substitute counsel. *Stenson v. Lambert*, 504 F.3d 873, 886 (9th Cir. 2007). The ultimate inquiry is whether the petitioner's Sixth Amendment right to counsel was violated by the denial of the substitution motion. *Schell v. Witek*, 218 F.3d 1017, 1024-25 (9th Cir. 2000).

Here, Petitioner has not identified a United States Supreme Court decision that clearly establishes that the failure to grant a motion for substitute counsel due to a conflict as alleged by Petitioner violates his Sixth Amendment right to counsel. Where the Supreme Court has not "squarely established" a legal rule that governs a particular claim, it cannot be said that a state court's decision unreasonably applied federal law when it


adjudicated the claim. See *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009); *Wright v. Van Patten*, 552 U.S. 120, 126 (2008); *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

Petitioner fails to demonstrate that the Nevada Supreme Court's ruling was objectively unreasonable. The Nevada appellate court reasonably concluded that there was no genuine conflict between Petitioner and his counsel and that the state court properly denied the motion to substitute. The Nevada Supreme Court's determination is supported by the record and is not objectively unreasonable. Accordingly, Petitioner fails to demonstrate that the Nevada Supreme Court's rejection of this claim was contrary to, or an objectively unreasonably application of clearly established federal law. Petitioner is therefore denied federal habeas relief as to Ground 6.

## V. CERTIFICATE OF APPEALABILITY

This is a final order adverse to Petitioner. Rule 11 of the Rules Governing Section 2254 Cases requires the Court to issue or deny a certificate of appealability ("COA"). Therefore, the Court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002). Under 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether this Court's procedural ruling was correct. *Id.*

Applying these standards, this Court finds that a certificate of appealability is unwarranted.

## VI. CONCLUSION

It is therefore ordered that Petitioner Clifford W. Miller's third amended petition for writ of habeas corpus under 28 U.S.C. § 2254 (ECF No. 29) is denied.

It is further ordered that a certificate of appealability is denied.

The Clerk of Court is directed to substitute Fernandies Frazier for Respondent Kyle Olsen, enter judgment accordingly, and close this case.

DATED THIS 23rd Day of January 2023.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE